465 A.2d 1001

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Keith R. BOWSER.**

Superior Court of Pennsylvania.

Submitted May 19, 1982.

Filed July 22, 1983.

Reargument Denied Oct. 14, 1983.

572

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

Michael Kelly, Pittsburgh, for appellee.

Before HESTER, McEWEN and JOHNSON, JJ.

McEWEN, Judge:

We here review an appeal of the Commonwealth from an order of the Common Pleas Court of Allegheny County which dismissed certain charges against appellee by reason of the determination of the trial court that the trial of appellee had not commenced in accordance with the mandate of Rule 1100. We reverse.

The proceeding in which this appeal has been taken bears the caption of Allegheny County Criminal Action No. CC 7907254A, for which the factual chronology is as follows:

January 15, 1979 Appellant allegedly obtained from Joseph and Joan Harsch, as a result of a conspiracy with

Cora Bowser, the sum of $12,000 which he diverted to his own use.

February 15, 1979 Appellant allegedly obtained from Joseph and Joan Harsch, as a result of a conspiracy with Cora Bowser, the sum of $3,000 which he diverted to his own use.

April 23, 1979 Appellant is charged by the City of Pittsburgh Police Department with theft of service from the Hyatt House Hotel and conspiracy with Cora Bowser to commit such theft.

The Pittsburgh Police Department commences on that same date an unsuccessful search for appellant and his accomplice upon the Hyatt House charges.

May 13, 1979 The Pittsburgh Police Department requests the police department of Phoenix, Arizona, to search for appellant.

June 8, 1979 The office of the Sheriff of Maricopa County, Arizona, reports it is unable to locate appellant.

June 13, 1979 Pittsburgh City Police Department Detective G. Diulus testifies before District Justice W. Little that appellant cannot be found.

November 9, 1979 Appellant is returned in custody to Pennsylvania after his apprehension in Phoenix, Arizona, in late October.

November 14, 1979 The instant criminal complaint charging the theft of $12,000 by deception, the theft of $3,000 by deception and conspiracy to commit such theft is executed and lodged against appellant.

January 22, 1980 District Attorney of Allegheny County files an Information charging the specific offenses of theft by failure to make required disposition of the $12,000, theft by failure to make required disposition of the $3,000 and conspiracy to commit such theft.

April 3, 1980 The appellant makes Application to dismiss certain of the counts pursuant to Rule 1100. The court orders that the hearing upon the Application to dismiss be held at the time of the scheduled trial date of April 8, 1981.

April 8, 1980 The trial judge conducted a hearing upon the Application for dismissal pursuant to Rule 1100 and directs that (1) the count charging theft by failure to make disposition of $12,000 be dismissed and (2) the count of conspiracy to commit such theft be amended so as to eliminate reference to the theft of the $12,000.

The foregoing chronology omits but one factor. It seems that the victims of this criminal behavior, Joseph and Joan Harsch, had proceeded on April 25, 1979, to sign a Private Criminal Complaint which, although approved in advance by the Assistant District Attorney pursuant to the Rules of Criminal Procedure, was presented to and signed by a District Justice as a Private Complaint, without the benefit of police attention to the alleged criminal activity either prior or subsequent to the filing of the complaint. Nor does it appear in the record that the District Justice as issuing authority issued a summons or warrant of arrest for service by a constable; in fact, Pittsburgh City Detective Diulus testified that his search for appellant through the weeks preceding June 13, 1979, included inquiries to various agencies, including the National Crime Information Center, all of which produced the response that no warrants for appellant were outstanding. It would appear from the record that there was absolutely no further action toward processing this Private Criminal Complaint, once it was signed by the private complainant on April 25, 1979, until after appellant was apprehended and returned to the Commonwealth. At that point, on November 14, 1979, the private complainant, Joseph Harsch, signed a formal statement of withdrawal upon the face of the Private Complaint before proceeding on that same date to execute a Police Criminal Complaint charging the three offenses which are the subject of scrutiny in this appeal.

Appellee urges that the 180 day period within which the Commonwealth was required to commence the trial began on April 25, 1979, at least insofar as concerns the charge expressed in the Private Complaint filed on that date. The hearing judge concluded that the Commonwealth had not

shown any evidence that the Private Complaint of April 25, 1979, triggered any effort of any type to locate or arrest appellant on that specific charge since all police efforts to locate appellant were inspired by the Hyatt House charges. The court concluded that, therefore, the Commonwealth failed to show such "due diligence" or such "unavailability of the accused", with respect to the Private Complaint, that would entitle the Commonwealth to exclusion of any period after the date of the Private Complaint. As a result of the finding that the Commonwealth was not entitled to any exclusion, the court determined that the 180 day period, within which the Commonwealth was required to commence the trial of appellant upon the charge specified in their Private Complaint, expired on October 23, 1979.

We note that the opinion of the distinguished Judge Henry R. Smith, Jr. is a very persuasive expression of a quite valid rationale for the conclusion he reached, especially in view of the fact that he did not have at the time of his decision the benefit of the subsequent thoughts expressed upon this issue by the Pennsylvania Supreme Court in 1981. The Court during that year declared in *Commonwealth v. Genovese*, 493 Pa. 65, 69–72, 425 A.2d 367, 369–71 (1981):

> Rule 1100 'serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society,' *Commonwealth v. Brocklehurst*, 491 Pa. 151, 153–54, 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson*, 487 Pa. 197 n. 4, 409 A.2d 308 n. 4 (1980).
>
> *     *     *     *     *     *
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to

punish and deter crime. In considering matters such as that now before us, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

The Court further stated in *Commonwealth v. Polsky*, 493 Pa. 402, 407–08, 426 A.2d 610, 613 (1981):

Common sense, the public interest, and justice demand that a defendant not be permitted the windfall of an absolute dismissal under Rule 1100 when he voluntarily absents himself from this jurisdiction, refuses to return, and due diligence by law enforcement authorities fail to secure his return.

Appellee asserts, of course, that he was not accorded the prompt trial required by Rule 1100(a)(2) which provides:

(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

■ It is clear that a condition precedent to the application of the rule and the 180 day countdown is that "the complaint [be] filed". Our study of the record reflects that this condition precedent was not met for the following reason:

Pennsylvania Rule of Criminal Procedure 134 [1] indicates that a magistrate must determine, after review, that the complaint is in satisfactory form and, if so, must:

(1) sign the complaint;

1. We here refer to Rule 134 as it existed on April 25, 1979, the date pertinent to our consideration. The subsequent amendment of October 22, 1981, effective January 1, 1982, expressed as § 134(b)(1) the previously implicit requirement that the issuing authority "accept the complaint for filing". While that amendment does not affect our review or discussion, it is consistent with the rationale of this opinion.

(2) issue a summons or warrant of arrest as the case may be.

While the district justice as issuing authority accepted the complaint for filing and signed it, he did not proceed to completion of the filing process since he apparently failed to issue a summons or warrant of arrest.

We conclude, therefore, that since the complaint was not filed, the form of complaint signed by the private complainant was a nullity. As a result, the subsequent complaint actually signed, filed and processed on November 14, 1979, is not overshadowed by Rule 1100 considerations.

Our holding does not conflict with the thoughtful opinion of our distinguished colleague, Judge Edmund B. Spaeth, in *Commonwealth v. Kellie,* 275 Pa.Super. 106, 418 A.2d 634 (1980), nor with the notions expressed in his concurring opinion in *Commonwealth v. James,* 258 Pa.Super. 157, 392 A.2d 732 (1978). The *Kellie* decision adopted the concurring thought of *James*[2] in holding that the 180 day countdown commences when the issuing authority signs the complaint and not when process issues. It must be emphasized, however, that the factual situation of both *Kellie* and *James* included the fact that the issuing authority not only signed the complaint but also provided for the issuance of process, while we here review a case where process never issued. We further hasten to note that the role of the *Kellie* court was to select which of the two dates—(1) the date that the private prosecutor signed the complaint or (2) the date that the issuing authority signed the complaint— triggered the countdown. Therefore, the issue we decide was not before the *Kellie* court. The *Kellie* rationale relies in large measure upon the Pennsylvania Supreme Court decision in *Commonwealth v. Mitchell,* 472 Pa. 553, 559, 561, 372 A.2d 826, 829–30 (1977), in which our highest Court opined:

**2.** It must be noted that the issue in James was whether the trigger date was (1) the date the District Magistrate signed the complaint or (2) the date the district attorney provided subsequent approval. Therefore, the issue we decide was not before the James Court.

[I]t is clear that Rule 1100 contemplates the commencement of the running of the mandatory period at the point criminal proceedings are initiated.

\* \* \* \* \* \*

In the situation of an arrest pursuant to a warrant, the complaint is filed prior to arrest, and thus considerations such as disruption of employment, curtailment of associations, subjection to public obloquy, and creation of anxiety are brought to bear prior to arrest. (citations omitted).

It must be underscored that the *Mitchell* court also reviewed a situation where there had been issuance of process and it should be noted that the consequences that there so greatly concerned the Supreme Court could not have awaited appellee in this case since process never issued.

█ We hold, therefore, that the issuance of process is a condition antecedent to completion of the filing of a complaint.

There may well be further reasons why the mandate of Rule 1100 does not in this case require dismissal of the charges that had been the subject of the earlier complaint of April 25, 1979. It seems of some significance that the earlier complaint was a Private Complaint and not a Police Complaint. As a result, through happenstance, it did not become a matter of police attention and purview. Therefore, it might be argued that it should not be subjected to the same strict, narrow interpretations of Rule 1100 that are needed to regulate and balance the vast forces the Commonwealth is able to marshall against an individual accused. Since the reflection of this case more closely resembles a one-on-one situation and since appellant had already been a fugitive for two days prior to the time that the Private Complaint was filed on April 25, 1979, it might well be asserted that, even if the complaint had been validly filed, the 180 day countdown should not even have begun. There is the further contention that the *de facto* unavailability of appellee which was proven at the Rule 1100 hearing should preclude consideration of the assertion by appellee

that the search conducted for him was not conducted as a result of these charges and he was not, therefore, *de jure* unavailable. However, our holding that the complaint of April 25, 1979 was not filed, makes unnecessary any discussion or disposition of these contentions.

Order of dismissal reversed. Case remanded for proceedings consistent with this holding. Jurisdiction is relinquished.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I must respectfully dissent to the majority's holding that the issuance of process is an "antecedent condition" to the filing of a criminal complaint.

In *Commonwealth v. Kellie*, 275 Pa.Super. 106, 418 A.2d 634 (1980) this court held that a private complaint was not deemed filed until an assistant district attorney had approved it and the district justice had signed it. Until that point, a summons or warrant could not be issued subjecting the defendant to the disruptions caused by a criminal proceeding. Rule 1100 did not start to run until that point. The court relied in part, on Judge Spaeth's concurring opinion in *Commonwealth v. James*, 258 Pa.Super. 157, 392 A.2d 732 (1978).[1] That concurring opinion argued that actual issuance of process was not the triggering event for Rule 1100 purposes as criminal proceedings commenced when process could potentially issue at the time the district justice approved the complaint.

The Supreme Court in *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977), in distinguishing a situation where a complaint follows an arrest from one where a complaint precedes the arrest stated that where a complaint is presented and process issues the criminal proceedings are commenced with the presentation of the complaint. In reaching such position the court found the complaint was

---

1. *James* was decided before a seven judge court; one judge joined in the concurring opinion. The majority did not address the rule 1100 claim.

filed with the presentation to the district justice and Rule 1100 runs from that point.

*Commonwealth v. Silver*, 238 Pa.Super. 221, 357 A.2d 612 (1976), resolved the issue of whether criminal proceedings commenced with the presentment of an investigating grand jury. In resolving such issue, the court compared its factual situation to the case where a criminal complaint was filed. It was noted that a complaint followed by a summons or warrant immersed a defendant in the criminal justice system. The court reasoned that once the complaint was filed, the prosecutorial forces would be quickly brought to bear by means of a summons or warrant. The conclusion reached was that the presentation of the investigating grand jury did not start the 180 day period because the subject of the presentment was not yet subject to summons or arrest.

The majority attempts to distinguish the above cases by distinguishing the factual settings of those cases. The issue resolved in *Kellie, supra* was whether a private complaint was filed when the complainant signed it or after the attorney for the Commonwealth approved it and the issuing authority accepted it. *Kellie, James, supra,* as well as *Mitchell, supra,* involved situations where process had issued close in time with the district justice's acceptance of the complaint. *Mitchell,* involved a police complaint. The majority therefore finds such cases are not controlling as the present issue was not properly before those courts.

While I cannot fault the majority's factual distinctions, I must respectfully disagree that such differences are determinative or persuasive in resolving the issue at hand. The majority correctly notes that the purpose behind the speedy trial rule is to protect the accused from both the direct and indirect ramifications of standing accused of a criminal deed. From the filing of the complaint the Commonwealth has 180 days (barring excludable time, waiver, or extension of time) to proceed to trial. According to the majority, no such protection should be afforded an individual who stands accused but has not been directed to appear; no protection

is necessary until the issuing authority places his signature on a summons or arrest warrant. I find such reasoning to be flawed.

An accused does not actually feel the pressures of the prosecution until he or she is actually summoned or arrested. The signing of the summons or warrant can no more disturb the tranquility of an unexpecting defendant than the acceptance of the complaint. Yet the courts of this Commonwealth have universally held that where a complaint precedes arrest, Rule 1100 commences from the date of the complaint. See *Mitchell, supra.* Therefore I believe the 180 day period runs from the district justice's acceptance of the complaint, not the issuance of process.

The majority opinion carefully attempts to avoid creating any notable differences between the application of Rule 1100 to private complaints and police complaints. However, lest dictum in the majority's opinion be misunderstood, I wish to express my opinion on any such difference. Rule 134, Pa.R.Crim.P., describes the role of the issuing authority "[i]n *any proceeding* initiated by complaint" (emphasis supplied). After reviewing the complaint, the district justice shall endorse the complaint and issue a summons or warrant. In both the case of a private complaint and police complaint the defendant may not be served with a summons or warrant until the district justice issues such. The practical difference, mentioned by the majority, that in the situation of a police complaint the authorities are aware of the alleged criminal activity and will take the appropriate action is of no weight. In either case the district justice must mail out the summons, or in the case of an arrest warrant, direct it to the police or a constable.

The majority proffers possible views on whether the Commonwealth had exercised due diligence as to the first complaint. However, having found the first complaint was a nullity, the lead opinion need not determine whether due diligence had been exerted as to the first complaint. As I

believe that Rule 1100 should run from the first complaint,[2] it must also be determined whether the Commonwealth may rely upon its claim of due diligence, in an unrelated case, for a concurrent time period, to demonstrate appellee's unavailability in the case at hand.[3]

Where the Commonwealth is aware of a defendant's incarceration in another jurisdiction, the Commonwealth may not assume the defendant is unavailable unless it has exerted a reasonable effort to secure his or her appearance. *Commonwealth v. Ryan*, 306 Pa.Super. 159, 452 A.2d 264 (1982); and *Commonwealth v. Davis*, 261 Pa.Super. 204, 395 A.2d 1388 (1978). While any comparison between the current situation and one where the suspect is known to be incarcerated is attenuated, the latter situation demonstrates that the Commonwealth may not presume a defendant's unavailability.

In a similar light, where a suspect is unavailable for trial on unrelated charges, the prosecution cannot successfully claim such a delay resulted in a delay in the proceedings at issue. Only where an absence causes a delay in the proceedings of the case in question can the period of delay be excluded pursuant to Rule 1100(d). *Commonwealth v. Haynes*, 245 Pa.Super. 17, 369 A.2d 271 (1976); *Commonwealth v. Lewis*, 237 Pa.Super. 357, 352 A.2d 99 (1975). See also *Commonwealth v. Bundridge*, 268 Pa.Super. 1, 14 n. 13, 407 A.2d 406, 413 n. 13 (1979) (dissenting opinion by Hoffman, J.). Under the facts of this case, I do not find that appellant's absence, as to the other charges, delayed the proceedings in this case as no effort was made to issue process on him.[4]

**2.** The attempt to withdraw the original complaint was not made until after the original 180 day period had expired. I believe such an attempt was not only untimely but also would have been ineffective even had it been made earlier. See *Commonwealth v. Sires*, 284 Pa.Super. 50, 424 A.2d 1386 (1980).

**3.** This issue is the crux of the Commonwealth's appeal.

**4.** The complainant testified that he did not know appellee's whereabouts, though he knew appellee "had left town." (N.T. pp. 14, 16).

In several other situations the Commonwealth has been likewise denied the benefit of a fortuitous turn of events. In *Commonwealth v. Vaughan*, 475 Pa. 227, 380 A.2d 326 (1977), the fact that a defendant was to be tried on other charges during a certain term of court, did not excuse the prosecution from trying him for the whole term, but only those days actually spent at trial. Nor could the mere fact that the defense attorney would have been unable to try the case had it been called to trial toll the period for trial unless the case was actually listed for trial. *Commonwealth v. Gregg*, 470 Pa. 323, 368 A.2d 651 (1977). While in *Commonwealth v. Hilliard*, 278 Pa.Super. 221, 420 A.2d 510 (1980), the Commonwealth was not allowed to rely on an earlier petition, certifying that a preliminary hearing could not be held because the defendant's whereabouts were unknown, to later satisfy it duty to exercise due diligence in locating the defendant.

In the light of the above cases, I would hold that the Commonwealth may not rely on the efforts of one police department, in an unrelated case, during a concurrent period, to supply due diligence in a second case where in the second case no effort is made to locate the defendant and the second enforcement agency has no knowledge of the first's efforts.[5]

I would affirm the order of the trial court directing that appellant be discharged. Therefore I respectfully dissent.

**5.** The Commonwealth contends any efforts by the second police agency would have been useless. While such may be true in a particular case, it is just as probable that a joint effort or a second effort may provide additional information leading to the defendant's apprehension.